[Civ. No. 346.    Third Appellate District.—August 6, 1907.]

WILLIAM MENZEL, Appellant, v. F. P. PRIMM, Respondent, and JAMES J. CHAMBERS, Codefendant.

VENDOR AND PURCHASER—DISTINCTION BETWEEN CONTRACT OF SALE AND OPTION.—The distinction between a contract to purchase or sell real estate and an option to purchase is that the contract to purchase or sell creates a mutual obligation on the one party to sell and on the other to purchase, while an option merely gives the right to purchase within a limited time without imposing any obligation to purchase, or, in other words, it is a right acquired by contract to accept or reject a present offer within a limited or reasonable time in the future.

ID.—OPTION TURNED INTO CONTRACT BY ACCEPTANCE.—When the offer embodied in an option is, within the time stipulated, accepted by any sufficient act or words of the party acquiring the right to accept or reject such offer, the transaction between the parties, *ipso facto*, ceases to be an option, and becomes a sale or contract of sale, according to the circumstances of the acceptance.

ID.—OPTION TO PURCHASE MINE—PART PAYMENT OF PURCHASE MONEY—CONTRACT OF SALE EFFECTED.—Assuming that the original agreement between the parties concerning the purchase and working of a mine could be construed as a mere option to purchase it, yet where, under a subsequent agreement, the terms of payment were modified, and the party holding the option paid $1,000 in cash on the purchase money, whatever may have been the original intention of the parties as to the nature of the transaction, it took on, from the time of such payment, the character of an agreement or contract of sale, and is capable of being specifically enforced.

ID.—EXECUTION OF SECURED NOTE—RECITAL OF DEBT IN AGREEMENT.—
Where, subsequently to such payment, the parties further agreed, in
lieu of further payment of money then due, that a secured note be
executed by the purchaser and a third party, payable sixty days
after date, the agreement reciting that ''there is now due and owing
claims in the sum'' for which the note was given, it would be un-
reasonable and absurd thereafter to construe the agreement other-
wise than as a contract of sale.

ID.—EFFECT OF NOTE—EXTENSION OF TIME—PRESUMPTION AGAINST
PAYMENT.—The effect of the secured note was to extend the time
of payment of the debt until the maturity of the note. The pre-
sumption is against its having been received as payment, in the
absence of an express agreement to accept it as such.

ID.—DEFENSE TO NOTE BY SURETY—FAILURE OF CONSIDERATION—RE-
PUDIATION OF CONTRACT—DEED NOT TENDERED.—The surety, what-
ever his relation may be to the other maker of the note, may de-
fend the note for failure of consideration by reason of the plain-
tiff having repudiated the contract after the maturity of the note
by a contract to sell the mine to a third party; and by failure of
the plaintiff to perform the contract by tender of a deed before
suit, after the time for full performance of the contract had ex-
pired.

ID.—INSTALLMENT LEFT UNPAID—MUTUAL AND DEPENDENT CONDITIONS
—PLEADING—EXECUTION OR TENDER OF DEED.—Where an overdue
installment is left unpaid until after the time for perform-
ance of the entire contract has expired, and the contract
is silent on the subject, the payment of the installment and the
execution and tender of a deed must be regarded as mutual and
dependent conditions, and it must be averred and proved that a
deed was executed or tendered before suit.

APPEAL from a judgment of the Superior Court of Shasta
County and from an order denying a new trial. C. M. Head,
Judge.

The facts are stated in the opinion of the court.

Reid & Dozier, for Appellant.

T. W. H. Shanahan and Chas. H. Braynard, for Respond-
ent.

HART, J.—This action was brought by the plaintiff to en-
force the payment of a promissory note for the sum of $2,500,
made and delivered on the twenty-eighth day of May, 1903,

by the defendants, and payable sixty days after date. The defendant, Chambers, was not served with process and made no appearance. The case was tried before the court, a jury having been waived by the parties, and judgment awarded to the defendant and respondent, Primm. This appeal is from said judgment and the order refusing plaintiff a new trial.

The note which is the foundation of the action was the outcome of a certain agreement in writing, dated the thirteenth day of February, 1903, under the provisions of which the plaintiff, on certain specified terms, agreed to sell certain mining claims to the defendant, Chambers, for the sum of $7,500, of which the sum of $3,500 was to be paid on or before the twenty-fourth day of March, 1903, and the remainder—$4,000—on or before the twenty-fourth day of September, 1903. The agreement provided that Chambers should have immediate possession of said mining claims for the purpose of working, mining and developing the same, and said Chambers agreed to "put two men to work thereon within sixty days" from the date of the agreement. Chambers was given the right to extract ores from said mining claims, but was to "leave all ores so extracted upon the dump, save and except such amounts as may be necessary for assay and sampling purposes." The agreement also stipulated that the "party of the second part (Chambers) shall have the use of a boiler now on said premises" and also "the use of the lumber and timber belonging to said mining property and in the event of the sale of said property will pay to said party of the first part the sum of $250.00 for the timber and lagging now on the ground on said premises." And the parties finally agreed that in the event the party of the second part shall fail to purchase said property he shall have the right to remove all machinery which he may have placed on said mining ground. On the twenty-sixth day of March, 1903, plaintiff and Chambers entered into a second written agreement, by the terms of which the time for the making of the first payment, $3,500, was extended to the twenty-fourth day of April, 1903, or thirty days from the twenty-fourth day of March, 1903, on which day said payment was, as originally agreed, to be made. On the twenty-first day of April, 1903, a third written agreement was made by plaintiff and Chambers, whereby plaintiff released said Chambers from the obligation of paying said sum of $3,500 on the said twenty-fourth day of April, 1903,

as provided in the agreement of the twenty-sixth day of
March, 1903. In that agreement—mentioned as the third—
plaintiff agreed to accept from said Chambers, in lieu of the
$3,500 which the latter had promised to pay plaintiff on said
twenty-fourth day of April, the sum of $1,000 in coin, and
the further sum of $2,500, to be paid on the twenty-fourth
day of May, 1903. A fourth agreement in writing was made
by the parties on the twenty-eighth day of May, 1903, by
which the plaintiff agreed to accept from Chambers a prom-
issory note for $2,500 in the place and stead of that amount
of money which Chambers had agreed to pay plaintiff on the
twenty-eighth day of May, 1903. Said note was executed by
Chambers and the respondent, and is the instrument upon
which this suit is based. The second, third and fourth agree-
ments to which we have just referred continued in force all
the stipulations, covenants and conditions contained in the
original agreement, save and except only the portion thereof
stipulating as to the times of the payments of the money
which the second party agreed to pay for said property.

The answer alleges that on the fifteenth day of April, 1903,
Chambers entered into a written agreement with one T. S.
Henderson, of St. Louis, Missouri, under and by which said
Chambers, for and in consideration of the sum of $25,000,
agreed to sell and convey to said Henderson all the mining
claims mentioned in the agreement between said Chambers
and the plaintiff, and said Henderson agreed to purchase the
same for said sum, whereof $5,000 was to be paid upon the
making of said agreement and $5,000 on the fifteenth day of
September, 1903, and the balance to be paid in installments
of $5,000 at the expiration of every six months thereafter un-
til the full purchase price was paid. The answer further al-
leges that, on the tenth day of August, 1903, the plaintiff and
the Great Western Gold Mining Company, a corporation, of
which said T. S. Henderson was president and the financial
agent and who had the general management and control of all
the business affairs of said corporation, entered into a writ-
ten agreement, by the covenants of which plaintiff agreed to
sell and convey by a good and sufficient deed to said corpo-
ration, and the latter agreed to buy the mining claims men-
tioned in the original agreement between the plaintiff and
said Chambers for the sum of $7,000, to be paid in certain
specified installments, and it was further agreed by plaintiff

that said corporation and its assigns might immediately, upon the execution of said agreement, enter into and take possession of said mining claims. It is also alleged in the answer that the agreement so entered into between the plaintiff and the said corporation "was made and entered· into for the purpose and with the intent that neither said Great Western Gold Company, or the said T. S. Henderson, either individually or as president, fiscal agent and the person who had general charge and management of the affairs of said company would make said payment of said sum of $5,000 to said Chambers, which was agreed and understood should be paid on the seventeenth day of September, 1903, and that said plaintiff would sell to the said Great Western Gold Company the said mining claims hereinbefore mentioned for the said sum of $7,000." The answer avers that the promissory note set out in the complaint was given for the purpose and the intent that the same might become a payment upon said mining property, and that no demand for its payment was made until more than six months after its maturity. "For a third and separate answer," the answer reiterates that the note in dispute was made and given and accepted as part payment of the agreed purchase price of said mining claims, and avers that "up to and including the tenth day of August, 1903, said defendant, Chambers, had performed on his part all the terms, time given and conditions of" the four several agreements between him and the plaintiff. It is also alleged that the plaintiff put it out of his power to carry out his part of the agreement with Chambers by agreeing, without the knowledge or consent of the defendants, to sell said property to the corporation mentioned, and that, therefore, the consideration for said promissory note "wholly and entirely failed." It may here be stated that the property which is mentioned in the agreement between the plaintiff and the Great Western Gold Company is designated therein as the "Vandevere Mine," but the answer alleges that it is the identical property mentioned in the agreement between plaintiff and Chambers.

It is contended by the appellant that the agreement between the parties was intended and understood by them to be an option tendered to the defendant Chambers, to purchase the property described in the instrument, while, on the other hand, the respondent maintains that it constituted a contract by the provisions of which the plaintiff agreed to sell and the

defendant Chambers agreed to purchase said property. "The distinction between a contract to purchase or sell real estate and an option to purchase is, that the contract to purchase or sell creates a mutual obligation on the one party to sell and on the other to purchase, while an option merely gives the right to purchase within a limited time without imposing any obligation to purchase." (29 Am. & Eng. Ency. of Law, 2d ed., p. 606.) In other words, an option is a contract by which the owner of property invests another with the exclusive right to purchase said property at a stipulated sum within a limited or reasonable time in the future. Or, stated in another form, it is a right "acquired by contract to accept or reject a present offer, within a limited or reasonable time in the future." (21 Am. & Eng. Ency. of Law, p. 924.) When the offer thus made is, within the time stipulated, accepted by any sufficient act or words of the party acquiring the right to accept or reject such offer, the transaction between the parties, *ipso facto*, ceases to be an option, but becomes a sale or contract of sale according to the circumstances of the acceptance.

Plaintiff testified that on the 21st of April, 1903, Chambers paid him the sum of $1,000. There is no provision in the agreement in express language which indicates that the document was intended as an option; but appellant undertakes to construe certain language contained therein as a manifestation that the parties intended and understood the instrument to be a mere offer to sell. But, assuming that the original writing could be construed as a mere option, it is clear that the payment by Chambers, on the twenty-first day of April, 1903, of the sum of $1,000 to the plaintiff operated as an acceptance of said option, and that, whatever may have been the previous intention of the parties as to the nature of their transaction, it took on, from the time of such payment, the character of an agreement or contract of sale, and its terms capable of being specifically enforced. And, assuming further, that the plaintiff intended the original writing to be nothing more than an offer to sell, it is manifest that, after the receipt by him of said sum of $1,000, and from the language of the fourth writing, executed by all the parties to this action, he, too, treated said payment of $1,000 as an act of acceptance of the option by Chambers. The "fourth writing" referred to was made subsequently to the payment of the

6 Cal. App.—14

$1,000 to the plaintiff, and reads in part as follows: "Whereas, there is now *due and owing* a payment on said mining claims the sum of $2,500; now, for and in consideration of the sum of $1.00 to me in hand paid by said James Chambers, I hereby agree to accept a promissory note of even date herewith, signed by said Jas. J. Chambers and F. P. Primm, in lieu of the sum of $2,500, said note being payable sixty days from and after date hereof, with interest at the rate of 8 per cent per annum until paid." In view of the fact of the payment of the $1,000 there can be but one meaning to the language quoted, "Whereas, there is now *due* and *owing* a payment on said mining claims," and that is that the mines had been sold and that there was then due from the purchaser the certain sum of money mentioned in said writing. To hold that, after the payment of the $1,000 by Chambers to the plaintiff, the transaction still remained an option (we are assuming but not conceding that the original writing was only an option) would be to declare that the said sum so paid was the consideration for the *right* acquired by Chambers under the option—that is, the right to accept or reject an offer to sell property itself valued at only $7,500. Such a construction of the agreement, under the circumstances, would be unreasonable and absurd.

It is further contended that, under a proper construction of the last or "fourth writing," the note sued on was "accepted as a payment on the contract or option and not as an extension of time," and that, therefore, the respondent is not "in a position to say anything because he is in no wise concerned with any agreement except the one as to the receiving of this note as payment." The claim is, in other words, that the note was intended as an absolute payment, and respondent not being a party to the agreement, cannot set up the defense of failure of consideration, which defense would be available to the principal, or Chambers. We do not think the facts as exhibited by the record warrant any such conclusion. On the contrary, we think it is plain, from the facts before us, that the note was not intended as a payment, but that it was designed only as an evidence of the indebtedness, and, therefore, operated only as a postponement or suspension of the *right* of action on such debt to a future time—that is, until its maturity. The contention of appellant is founded on his construction of certain language contained in the agreement

(the "fourth writing") that the note is accepted "in lieu of the sum of twenty-five hundred dollars," etc. It is doubtful whether that language warrants the construction thus given it by appellant; but if it may be said to be reasonably susceptible of such construction, we think that it is equally capable of the opposite interpretation that it was intended, and so given and accepted, for the purpose merely of deferring to the date of its maturity the right to bring suit upon the debt of which it constituted written evidence. But to impart to the note the effect contended for by appellant, there should be an express agreement that it was to be deemed and accepted as an absolute payment. It is well settled that the note of a debtor or of a third party, if not itself paid, does not constitute a payment unless received by the creditor under an *express agreement* to accept it as an absolute payment. "The presumption is not in favor of its being received as payment." (*Bonestell* v. *Bowie,* 128 Cal. 515, [61 Pac. 78]; *Dingley* v. *McDonald,* 124 Cal. 90, [56 Pac. 790]; *Savings Bank* v. *Central Market Co.,* 122 Cal. 33, [54 Pac. 273]; *Delapiazza* v. *Foley,* 112 Cal. 380, 386, [44 Pac. 727]; *Savings etc. Soc.* v. *Burnett,* 106 Cal. 514, 528, [39 Pac. 922]; *Steinhart* v. *National Bank,* 94 Cal. 362, [28 Am. St. Rep. 132, 29 Pac. 717]; *Comptoir D'Escompte* v. *Dresbach,* 78 Cal. 15, [20 Pac. 28]; *Welch* v. *Allington,* 23 Cal. 322.) There is no *express agreement* here that the note should be treated and accepted as a payment. The allegation in the answer that the note was given as a payment does not affect our views upon the subject. We do not know how the respondent was led to make such an allegation in his pleading, since, in his brief, he vigorously opposes the view which the language of the averment seems to imply. We do not feel bound by the construction of a document by a pleader which is plainly at variance with the language of the instrument itself as well as with the extrinsic circumstances, as disclosed by the record, which surrounded and accompanied its execution. The allegation at best is a mere conclusion, and we are rather of the opinion that the pleader only intended to state, though, it may be admitted, by the employment of inapt language, what the fact is, that the note was given as evidence of the indebtedness payable at the maturity of said note.

There seems to be no question raised here that a surety may defend upon the ground of an absence or failure of

consideration of a promissory note to which he is a party, if the action thereon is by the original payee. The liability of a surety cannot be greater than that of the principal (*Stockton etc. Society* v. *Giddings,* 96 Cal. 90, [31 Am. St. Rep. 181, 30 Pac. 1016]), and where there is a failure of consideration to support it, the note would be just as amenable to attack upon that ground by a surety as by the principal— where the suit is between the original parties and no rights of an innocent holder are involved. But the respondent claims that he was a principal. While we cannot say that the evidence justifies that conclusion, it is nevertheless apparent therefrom that the respondent had an interest in the agreement between plaintiff and Chambers, independent of that involved in his mere liability upon the note. He testified that he became a party to the note because, among other reasons, he expected that Chambers would make money out of the property and ''would reimburse me to a certain extent out of the mine. I started him in business when he had nothing and if he accumulated a competence, I expected to be reimbursed for what I had done for him when he was poor and needy.''

He also stated that he and plaintiff had ''discussed the matter about accepting the note.'' By the statement that he expected to be ''reimbursed to some extent out of the mine,'' the respondent evidently meant that Chambers intended to remunerate him for his acts of assistance—signing the note, etc.—as soon as he could make the money from the mines, and from this it is reasonably inferable that there was some understanding between Chambers and respondent to that effect. But whether there was such an understanding or not, or whether, as appears to be the fact, the respondent was thoroughly familiar with the antecedent transactions of plaintiff and Chambers as to the property involved, and upon the faith of such knowledge and his expectation of participating in the profits of the mines under the ownership and development by Chambers, signed the note, it was in any event his unquestionable right in *this* action by the original payee to interpose the defense of want of consideration, even though he played no other role than that of surety.

The evidence shows that the consideration for the note in dispute, for a time at least, failed absolutely, because after its maturity and long before the commencement of this action,

the plaintiff entered into a contract with the Great Western Gold Company, by the provisions of which the latter was to buy from the plaintiff the identical property which is the object of the agreement between plaintiff and Chambers. Plaintiff himself testified: "I received one thousand dollars for the same property from the Great Western Gold Company on the 16th day of October, 1903. Some time after this I received $500.00 besides the $1,000.00 from the Great Western Gold Company for the same property. I still hold the title and the possession of the Scottish Chief and Santa Clara mines, sometimes known as the Vandevere mines. I gave the Great Western Gold Company possession, I think, on the 16th day of October, 1903, for a time, and I have possession of it now."

It is thus seen that appellant, a short time after the date of the maturity of the note here, placed himself in a position in which he could not have performed his part of the agreement with Chambers, even if he had desired to do so, unless he had been able to make such terms with the corporation as would have enabled him to convey the property to the defendants. The consideration for the note had failed by the act of the plaintiff himself. At the time of the commencement of this action his agreement with the corporation, it appears, ceased to be binding, and he again took possession of and assumed control over the property. We think that the significance of the circumstance of the contract of option between plaintiff. and the Great Western Gold Company is in the fact that the plaintiff thus gave evidence of his intention of treating his contract with Chambers as no longer existing or binding. And if he did not so intend to treat it, why did he assume complete control over the property and attempt to dispose of it to other parties?

If he intended to hold Chambers and the respondent to their contract, he should have first tendered them a deed to the property, or offered to convey to them such interest in it as would be commensurate with the money already paid and the sum due on the note. He admitted that at no time did he offer to execute a deed to the parties or to either of them. These views are, of course, based upon the theory that the transaction between the parties involved a contract of sale and not an option, as contended by appellant. As we have before declared, we have no doubt that the agreement was one to sell

on the part of the plaintiff and to purchase on the part of Chambers. We think the case at bar comes within the principles laid down in the case of *McCroskey* v. *Ladd*, 96 Cal. 456 et seq., [31 Pac. 558], where the court says that an "action upon a note, being between the original parties thereto, is subject to an inquiry into its consideration, and is also subject to *any equities* existing between the parties which arise out of the execution of the note, or are connected therewith. The note was given for a portion of the purchase price of a tract of land to be thereafter conveyed by the plaintiff under his agreement with the defendants and their associates; was executed in pursuance of said agreement at the same time with the execution of the agreement; was a part of the same transaction, and is to be interpreted and regarded as a part of the agreement made between the parties at that date." The note here was, as were all the other writings of which we have made mention, an outgrowth of the transaction between the parties and a part and element thereof, and all said writings, including the note, are to be construed as one agreement. In the case from which we have just quoted the court further says:

"The respective obligations of the parties to an agreement for the conveyance of land, when the purchase-money is made payable in installments, are to be construed as independent obligations, or as dependent and concurrent, according to the terms in which the agreement is expressed. If an installment is made payable prior to the date at which the conveyance is to be made, the obligation to pay the installment and to make the conveyance will be regarded as independent obligations, and the seller can maintain an action for the recovery of the installment without the execution or tender of a conveyance; whereas, if the payment of the installment is to be made upon the execution of the conveyance, no recovery thereof can be had, except upon the averment and proof of such execution, or a tender thereof. *If the agreement is silent upon this point, the obligations will be regarded as mutual and dependent, so that neither party can have a right of action against the other without a previous performance or offer to perform on his part; and if the time for the performance of the conditions on both sides has expired, it is incumbent on either party, before he can enforce a performance by the other, to do or offer to do all that by the agreement he is required to do.*"

The agreement here is silent upon "the point" mentioned in the opinion. The time within which the conditions here were to be performed, in the absence of express language fixing a time, can only be held to be that which expired coincidently with the date of the maturity of the note.

Complaint is made of certain rulings of the court upon questions of admissibility of evidence, but they are not sufficiently important to demand special attention. The rulings, to which exceptions were reserved and claimed here to have been prejudicial to plaintiff, even if they be conceded to be erroneous (and we do not so hold them to be), could not, in our opinion, have resulted in injury to the appellant.

The findings are amply supported by the evidence, and the judgment is just, equitable and conscionable. Under the facts, as they are recorded here, any other judgment would be the reverse.

The judgment and order are affirmed.

Chipman, P. J., and Burnett, J., concurred.