[Civ. No. 1870.   Third Appellate District.—October 17, 1918.]

## J. W. HOWARD, Respondent, v. D. W. HOBSON COMPANY (a Corporation), Appellant.

JUDGMENT — FINDINGS OUTSIDE ISSUES — QUALIFICATION OF RULE — THEORY OF TRIAL.—The general rule that a judgment cannot stand where the findings are wholly outside the issues made by the pleadings is qualified where a case has been tried upon the theory, without objection from either party, that some vital question, not in fact made an issue by the pleadings, has nevertheless been made an issue by the introduction of proof addressed thereto.

PLEADINGS — LIBERAL CONSTRUCTION — QUALIFICATIONS.—The rule for liberal construction of pleadings provided by section 452 of the Code of Civil Procedure does not permit the insertion in a pleading, by construction, of averments which are neither directly set forth therein nor within the fair import of those which are set forth.

VARIANCE—COMPLAINT AND FINDINGS.—There is no material variance between a complaint which alleges in effect a contract by the defendant to divide equally with the plaintiff the gross profits to be made by securing an option to purchase land at a certain price and selling the land at a larger stated price, and a finding which found the contract to be in effect for one-half the net profits, and awarded the plaintiff that sum.

INTEREST—LIQUIDATED DEMAND.—Under a contract by which the defendant agreed to give the plaintiff an equal share of the profits to be made on a purchase and sale, the profits were ascertainable by simplest arithmetical calculation the moment the sale was made and the amount then became a liquidated demand on which interest was properly allowed.

STATUTE OF FRAUDS — PURCHASE OF LAND — AGREEMENT TO PROCURE OPTION.—An agreement to procure from the owner of land an option

to purchase it is not required by subdivision 6 of section 1624 of the Civil Code to be in writing.

APPEAL from a judgment of the Superior Court of Sacramento County. Chas. O. Busick, Judge.

The facts are stated in the opinion of the court.

Devlin & Devlin, for Appellant.

C. E. McLaughlin and B. F. Driver, for Respondent.

HART, J.—The second amended complaint in this action is in four counts. In the first count it is alleged that D. W. Hobson Company is a corporation having its principal place of business in San Francisco; that, prior to the sixth day of November, 1912, Maud Moore was the owner of a certain tract of land in Colusa County; that, in March, 1912, "plaintiff informed said defendant and its agents that he could obtain an option giving him the exclusive right to purchase said land for the sum of $25,000 and said defendant, then and thereby and through its authorized agents, agreed to and with plaintiff that if plaintiff would secure the option from said Maud Moore for the purchase and sale of said land for the sum of $25,000," defendant would endeavor to sell said land "and in the event of such sale would divide the amount received for said land in excess of $25,000 equally with plaintiff," and would pay to plaintiff "one-half of said excess sum over said $25,000 as his commission and share of the profits accruing under said option as aforesaid"; that, in March, 1912, plaintiff, pursuant to said agreement, procured from said Maud Moore an agreement in writing whereby, for the sum of one hundred dollars paid to her, she granted to defendant a ninety-day option to sell said land; that plaintiff procured extensions of said option and that it was in full force and effect on the 6th of November, 1912; that, on said last-mentioned date, defendant purchased the property from said Maud Moore for the sum of twenty-five thousand dollars and sold the same to one Chester Von Grafen for $33,890; that, under and pursuant to said agreement between the parties hereto, defendant promised to pay to plaintiff one-half of said profits, amounting to $4,445; that demand was made

upon defendant for the payment of said sum, which remains unpaid.

In the second cause of action it is alleged that defendant received from Chester Von Grafen the sum of $4,445 for the use of plaintiff, which has not been paid.

It is alleged in the third cause of action that, in May, 1912, "plaintiff and defendant entered into an agreement by the terms of which defendant agreed that if plaintiff would procure from the owners of that certain ranch commonly known as the 'A. W. Campbell Ranch,' " in the county of Yuba, "an option contract to purchase said ranch at a price not to exceed $60 per acre and would assign said contract to defendant, defendant would pay plaintiff for his services in procuring said contract the sum of $200." It is then alleged that plaintiff secured said option contract and assigned the same to defendant; that he demanded of defendant the payment of two hundred dollars, but that said sum remains due and unpaid.

In the fourth cause of action the allegation is that defendant received two hundred dollars for the use of plaintiff on account of the option contract mentioned in the third count.

The answer denies the allegations of the first and second counts of the complaint; admits the procurement by plaintiff of the option set forth in the third count of the complaint, but alleges that plaintiff acted in the premises as the agent and employee of the defendant and held all rights under the contract as trustee for defendant; denies that defendant agreed, upon the assignment of said option by plaintiff to defendant, to pay him two hundred dollars and denies that said or any other sum is due plaintiff by reason of the facts alleged; and denies the averments, contained in the fourth cause of action, that defendant received the sum of two hundred dollars for the use of plaintiff.

The court found that the allegations of the complaint were true and that the denials in the answer were untrue. It was then found, in the exact language of the complaint, that plaintiff procured an option from Maud Moore pursuant to agreement with defendant, assigned the same to defendant and that defendant sold the property to Von Grafen. It was next found that defendant, "in making said sale expended and paid out" $1,786.24; "that the profit derived by said defendant in making said sale is the difference between

$25,000 and $33,890, less $1,786.24, the total of said expenses, making a net profit received by defendant in making said sale of $7103.76; that one half of said profits is the sum of $3551.88,'' which sum ''was received by defendant in making the sale of the said premises and from Chester Von Grafen for the use and benefit of plaintiff.'' The findings then follow the allegations of the complaint with reference to the option for the sale of the Campbell ranch.

Judgment was entered in favor of plaintiff for the sum of $3,751.88, with interest on $3,551.88 from the 6th of November, 1912. The appeal is from the judgment.

The record discloses evidence sufficient to support the findings: 1. That the defendant employed the plaintiff to secure for it options giving it the exclusive right to purchase both the Moore and Campbell properties, and that, as to the Moore ranch, the defendant agreed with the plaintiff to reimburse him for the services performed in securing the option to purchase the same by the payment to him of a sum equal to one-half of the net excess over the amount which the defendant was required to pay the owner of the land for it, and that for obtaining for it the option to purchase the Campbell property the defendant agreed to pay the plaintiff the sum of two hundred dollars. 2. That the plaintiff did procure said options for the defendant, and the properties involved in said options were subsequently sold by the defendant for amounts, respectively, in excess of those for which they were purchased from the owners.

But it is contended that the judgment cannot be upheld for these several reasons, viz.: 1. That there is a material variance between the findings and the issues joined; that the findings are conflicting and contradictory, and are insufficient to support the judgment for the asserted reason that, while the contract pleaded is for one-half of the gross profits which might be obtained from the sale of the Moore ranch, the judgment is for one-half of the net profits found to have been realized from said sale. 2. That the court erred in allowing interest on the sum of $3,551.88, which sum was found to be one-half of the profits realized from the sale of the Moore ranch. 3. That the court erred in allowing testimony of the oral employment of the plaintiff by the defendant to procure the options mentioned, in refusing to strike out such testimony and in refusing to grant defendant's motion for a non-

suit on the close of plaintiff's case, the grounds of such objection and motions being that the employment of plaintiff as above indicated was oral or not in writing, as is required (so it is contended) in such cases by section 1624, subdivision 6, of the Civil Code. 4. That the uncontradicted evidence shows that the employment of the plaintiff was oral or not by a writing, hence such purported employment of the plaintiff for the purpose stated was void and consequently the finding of a contract of employment is contrary to the evidence. 5. That the contract alleged in the complaint related only to the "original term of option," and, the option having been extended by the owner of the property, a new contract, entirely independent of and distinct from the original option as obtained by the plaintiff, thereupon arose and with which contract the plaintiff had no connection. There are some other propositions advanced under this head, to which due attention will be given in the course of the discussion to follow.

1. Obviously, where findings are not waived, no judgment can stand where the findings are wholly outside the issues made by the pleadings. This is the general rule, which, however, has a limited qualification and which is applied in those instances where a case has been tried upon the theory, without objection from either party, that some vital question, not in fact made an issue by the pleadings, has nevertheless been made an issue by the introduction of proof addressed thereto.

The rule in this state with respect to the construction of a pleading, for the purpose of determining its effect, is that its allegations must be liberally construed, with a view to substantial justice between the parties. (Code Civ. Proc., sec. 452.) It is not to be assumed from that rule of construction, however, that by construction there may be inserted in a pleading vital pretermitted averments, or averments which are neither directly set forth therein nor reasonably within the fair import of the language of those which are set forth. But if the averments themselves may, without a strained construction, or without doing violence to language, be held clearly to imply or state a fact essential to the statement of a cause of action or to the support of the theory upon which reliance must be had to make out a case or a defense, then the rule of the code should be invoked and the

38 Cal. App.—29

pleading construed with a view to the promotion of substantial justice between the parties to the action.

By the light of the rule thus stated, the complaint here must be considered, and so viewing it, we cannot agree to the proposition that it is obnoxious to the objection made against it by the defendant. It will be observed that the allegation with respect to the compensation of plaintiff for procuring the Moore ranch option is that it was agreed by and between plaintiff and defendant that the defendant, in the event of a sale by it of said ranch, "would divide the amount *received* for said land in excess of twenty-five thousand dollars equally with plaintiff."

Nowhere does the complaint directly or expressly allege that the division was to be upon the basis of the gross profits realized from the sale of the land. Indeed, it is not therein stated whether the division shall be of gross or net profits, but merely of the amount in excess of twenty-five thousand dollars so *received* by the defendant on the sale. The word "receive," or "received," is, like many words in our language, a relative term, and its meaning or signification may be different, according to the circumstances under which and the connection in which it is employed. In this case it seems to us to be manifest that the word "received," as used in the pleaded agreement, has reference to the amount of money in excess of the purchase price of the Moore ranch which the parties are entitled to retain for their own use and benefit— that is to say, that sum of the excess which remains after all expenses necessarily incurred in negotiating and consummating a sale of the land by the defendant have been paid. If a broker, in selling land or other property, incurs expenses and pays the same, it cannot be said that he has received for his services the sum or sums which he has been compelled to expend in the liquidation of the expenses so incurred. Therefore, we conclude that what the complaint means by stating that the defendant agreed to divide equally with the plaintiff the amount in excess of the purchase price of the Moore ranch which the defendant *received,* was that the division should be upon the basis of the net and not upon that of the gross excess realized from the sale—that is, that the plaintiff should receive for his services one-half of what was actually earned as a result of the transaction, and in what is *actually earned* by the defendant cannot reasonably be in-

cluded money paid out to carry out the transaction. That this is the correct interpretation of the word ''received'' as used in the complaint, and that said word was intended by plaintiff to bear that meaning in describing in the complaint his agreement with the defendant, is indubitably shown by paragraph 6 of that pleading, wherein it is alleged: ''That said purchase and sale of said real property as set forth in the last preceding paragraph of this complaint was made pursuant to said agreement between plaintiff and defendant and whereby defendant agreed and promised to pay plaintiff one-half of the *profit* resulting from the purchase and sale of said real property . . . and the *profit* resulting from said purchase and sale and which in said agreement . . . was to be divided equally between them was and is the sum of eight thousand eight hundred and ninety dollars,'' etc.

The word ''profits,'' says the supreme court in *People* v. *Savings Union,* 72 Cal. 199, 202, [13 Pac. 498, 499], ''signifies an excess of the value of returns over the value of advances,'' or, as the word is defined in *Connolly* v. *Davidson,* 15 Minn. 519, [2 Am. Rep. 154], it means ''the excess of receipts over expenditures,'' or in *Eyster* v. *Centennial Board of Finance,* 94 U. S. 500, [24 L. Ed. 188], it is ''the receipts of a business, deducting current expenses; it is the equivalent to net receipts.''

But it does not necessarily follow from the fact that the plaintiff asked in his complaint for more than the court found that he was entitled to under the agreement that a variance thus arises between the contract pleaded and the one found by the court. The gist of the agreement is that the defendant thereby *employed the plaintiff to secure an option for the purchase of the Moore ranch and agreed and promised to pay plaintiff for that service,* and assuming, for the purpose of the argument only, that the plaintiff sued for one-half of the gross excess, the situation which developed at the trial with reference to that contract is simply this: That the proof showed that, in stating in his complaint the amount due him from the defendant by virtue of the terms of *said contract,* he made a claim for a larger sum than the court found, upon sufficient evidence, that he was actually entitled to thereunder—that is, under the very contract declared upon. The difference thus arising between the agreement declared upon and the evidence and the findings could not have misled the

defendant to its prejudice in maintaining its defense upon the merits, and, therefore, the variance, if variance there be, is immaterial and cannot be made to operate to overthrow the judgment. (Code Civ. Proc., sec. 469; *Taylor* v. *Morris,* 163 Cal. 717, 724, [127 Pac. 66]; *Doolittle* v. *McConnell,* 178 Cal. 697, [174 Pac. 305].) Indeed, far from misleading the defendant, the fact that a difference in the amount claimed by the plaintiff and the amount found to be actually due him under the pleaded agreement was brought out by the defendant itself. It is to be further suggested (again assuming that the complaint sets up an agreement which calls for a division upon the basis of the gross amount of the excess) that the finding that the sum due the plaintiff is considerably less than that so claimed by him is favorable to the defendant, and thus it is obvious that the latter in point of fact suffered no prejudice from the alleged variance.

It results from the foregoing that the findings, having followed the averments of the complaint, are neither conflicting nor contradictory, nor variant in any material aspect from the issues joined. Nor, it should be added, do we find anything in the cases cited by the defendant upon the point under present consideration which supports its objection that the findings are materially at cross-purposes with the issues as tendered by the complaint or with the contract as so declared upon.

2. We think the court was right in allowing legal interest on the share of the plaintiff in the "excess amount" for which the Moore ranch was sold by the defendant from the sixth day of November, 1912, the day on which the latter sold said ranch. (Civ. Code, sec. 1917.) It is, among other things, provided by that section that, unless there is an express contract in writing, fixing a different rate, interest is payable at the rate of seven per cent per annum on moneys, after they have become due, "received to the use of another and detained from him." In this case, the money coming to the plaintiff as his share of the profits realized from the sale of the ranch became due on the day the sale was made by the defendant. It is argued, however, that the one-half of the money received by the plaintiff for the ranch in excess of the purchase price thereof "was not plaintiff's money received by defendant as a collector to be turned over to plaintiff, but on plaintiff's own version of the contract the excess

sum was merely to be taken as a measure of the compensation which he was to have, and, according to the findings of the court, that measure remained unknown until the amount of net profits was ascertained. The unsupported and repugnant finding that the money was received to plaintiff's use being rejected,'' proceeds the argument, ''nothing remains but the finding of an unliquidated demand due to plaintiff''; and it is added that interest is not allowable on unliquidated demands, citing *Cox* v. *McLaughlin,* 76 Cal. 60, [9 Am. St. Rep. 164, 18 Pac. 100], and *Swinnerton* v. *Argonaut Land Co.,* 112 Cal. 375, [44 Pac. 719].

As above stated, the moment that the sale of the ranch was fully effected and completed by the defendant, that moment the latter became indebted to the plaintiff in an amount equal to one-half of the net sum received by the defendant over and above that paid for the property to the owner of the ranch; and at that moment of time the amount due the plaintiff became certain and definite or capable of becoming readily so by the simplest of arithmetical calculation by the defendant of the difference between the ''excess amount'' and the amount of the expense which it was necessary for it to incur to negotiate and consummate the sale. The defendant, of course, knew precisely what the expense of selling the ranch amounted to, and, of course, knew the ''excess amount'' received by him from the sale over the purchase price. The amount due the plaintiff, therefore, constituted, within the meaning of the law, a liquidated demand.

The sole reason given by the cases for the denial of interest on unliquidated demands is ''that the person liable does not know what sum he owes, and, therefore, can be in no default for not paying.'' (*Cox* v. *McLaughlin,* 76 Cal. 60, 67, [9 Am. St. Rep. 164, 18 Pac. 100]. See, also, *Courteney* v. *Standard Box Co.,* 16 Cal. App. 600, 613–615, [117 Pac. 778]; *McCowen* v. *Pew,* 18 Cal. App. 482, [123 Pac. 354]; *Robinson* v. *American Fish Co.,* 17 Cal. App. 212, [119 Pac. 388]; *Fairchild* v. *Bay Point etc. Ry. Co.,* 22 Cal. App. 328, [134 Pac. 338]; *Meyer* v. *Buckley,* 22 Cal. App. 96, [133 Pac. 510].) The reason of the rule disallowing interest on unliquidated demands has no application to the facts of this case, since, as above shown, the defendant knew precisely what sum it owed to the plaintiff.

The case cited by the defendant, *Swinnerton* v. *Argonaut Land Co.*, 112 Cal. 375, [44 Pac. 719], was an action on a *quantum meruit* for professional services performed by an attorney at law, and is not in point here. In all cases founded on implied contracts, or on express contracts for that matter, where the amount due cannot be ascertained except upon an accounting, or where (on implied contracts) it cannot be ascertained except upon evidence showing the reasonable value of services rendered or goods sold, the reason of the rule denying interest upon the amount thus ascertained to be due applies with peculiar pertinency, for the demand in such cases is unliquidated in the strictest sense. But, as we have shown, this is no such a case. Nor does it become one merely because the plaintiff was required to appeal to the courts for the enforcement of the terms of the agreement. As stated, the amount due plaintiff under the agreement was fixed and certain, and it was only the refusal of the defendant to comply with its plain provisions which necessitated, as may be true in the case of the payee or holder of a promissory note or that of an obligee of any other obligation, definite and certain in its terms, including that of the amount due, a resort to a judicial proceeding to enforce compliance with its terms.

3. Both points 2 and 3, in the order in which they are above given, involve, so far as is concerned the premise thereof, the same proposition, viz.: That the authority of the plaintiff to negotiate for and secure the option for the purchase of the Moore ranch for the defendant was void because not in writing. The theory upon which these points are advanced is that the employment of the plaintiff by the defendant for the purpose of securing the option in question came within the terms of section 1624, subdivision 6, of the Civil Code, which provides that "an agreement authorizing or employing an agent or broker to purchase or sell real estate for compensation or a commission" is invalid, "unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged, or by his agent." Section 1973 of the Code of Civil Procedure contains a like provision in subdivision 6 thereof.

Both the plaintiff and the defendant were, at the time of the transactions upon which this action is founded, real estate brokers in the city of Sacramento. The contract entered into

between the parties with respect to the Moore ranch described in the complaint was not for the sale or purchase of real property. All that the plaintiff was required or expected to do under the agreement was to secure an option for the purchase of the land to which the agreement related for the defendant. An option is neither a contract of sale and purchase nor an agreement to sell and purchase land or other property. An option is a contract by which the owner of property invests another with the exclusive right to purchase such property at a stipulated sum within a limited or reasonable time in the future, and, unlike an agreement to sell and purchase, imposes no obligation to purchase upon the party to whom it is given. (*Menzel* v. *Primm*, 6 Cal. App. 204, 209, [91 Pac. 754], and authorities therein cited.) As above stated, there was no obligation imposed on the plaintiff by the agreement in question to negotiate for the purchase of the property referred to for the defendant. He was simply employed to induce the owner of the ranch to give the defendant the *right* to purchase the property within a certain time—a right which it was wholly optional with it to exercise or not exercise, as it saw fit. Such being the nature of the agreement between the parties as to the Moore property, there was no legal necessity for reducing it to writing. In other words, such an agreement does not come within the provisions of section 1624, subdivision 6, of the Civil Code, nor, to be valid, is it required by any provision of our statute of frauds to be in writing and "signed by the party to be charged," etc. But we may go further and hold that, even if it were necessary to concede that the agreement in question in effect involved the employment of the plaintiff to purchase the Moore property for the defendant, still, since said agreement was between real estate brokers and not between a broker and the owner of the land, it was not necessary, to make it valid, that it should have conformed to the formalities prescribed by subdivision 6 of section 1624 of the Civil Code.

The evidence shows, as above pointed out, that both the plaintiff and the defendant were real estate brokers, and it is undisputed that the commissions for the sale of the land had been received by the defendant. Therefore, there existed a fund out of which the defendant could have paid the com-

missions which the court found the defendant had promised to pay to the plaintiff.

In *Gorham* v. *Heiman,* 90 Cal. 346, [27 Pac. 289], the action was by certain real estate brokers against other persons engaged in a like business for a certain commission alleged to be due the plaintiffs for the sale of a mine under an oral agreement. There, as here, it was contended that the agreement upon which the action was based was void because it was not in writing and signed as required by section 1624 of the Civil Code. The supreme court, by the late Chief Justice Beatty, in reply to that proposition, said, "But, reading the whole complaint together, it is apparent that the contract alleged was merely to buy and sell as brokers, and there is no statute of frauds requiring such contracts to be in writing. Besides, there is enough in the complaint to show a cause of action against the appellants, independent of the contract of partnership. It shows an agreement to co-operate in obtaining authority to sell, and in selling a mine for an equal share of the commissions. It shows that the agreement was acted upon. It shows performance on the part of plaintiffs, collection of the commissions by appellants, and refusal to divide. Certainly this establishes a cause of action if the agreement was valid, and we know of no ground upon which it can be held invalid. Counsel seem to rely on section 1624 of the Civil Code, subdivision 6. But, clearly, that provision was only designed to protect owners of real estate against unfounded claims of brokers. It does not extend to agreements between brokers to co-operate in making sales for a share of the commissions. It may be, as counsel argue, that the allowance of such claims as plaintiffs and interveners make in this action, unsupported, as they are, by any written evidence of the contract, opens the door to frauds of as gross a nature as were ever perpetrated by real estate brokers under pretense of oral employment by the owners to make sales; but if so, the evil is one which the legislature alone can remedy. It might be as plausibly argued that contracts should generally be held void if not in writing; but the law is otherwise. (Civ. Code, sec. 1622.)"

The foregoing is decisive of the point under present consideration, assuming, though not conceding, that the purpose of the agreement referred to here was to employ and authorize the plaintiff to purchase real estate for the defendant. A

careful analysis of the following cases cited by the appellant will show that they do not modify or qualify or in any way change the rule as it is declared in *Gorham* v. *Heiman,* 90 Cal. 346, [27 Pac. 289]; *Aldis* v. *Schleicher,* 9 Cal. App. 372, [99 Pac. 526]; *Casey* v. *Richards,* 10 Cal. App. 58, [101 Pac. 36]; *Saunders* v. *Yoakum,* 12 Cal. App. 543, [107 Pac. 1007]; *Johnston* v. *Porter,* 21 Cal. App. 97, [131 Pac. 69]; *Sellers* v. *Solway Land Co.,* 31 Cal. App. 259, [160 Pac. 175].

4. The propositions last discussed in the briefs involve, among others, the question whether the purchase of the Moore ranch by the defendant was under the option procured by the plaintiff or under an option secured subsequently by the defendant itself without the aid of the former.

It appears that the Moore option was executed and dated April 19, 1912, and was to run for ninety days from said date. As a consideration therefor, the defendant paid the owner of the land the sum of $50. The option provided that the first payment on the purchase price of the land ($24,950) should be the sum of $1,950. On July 17, 1912—two days before the expiration of the time limited by the option—the defendant paid the owner and the latter accepted the sum of one hundred dollars on account of the first payment to be made thereunder. At the same time, the time for the payment of the balance on the first payment was extended by Mrs. Moore to October 19, 1912, and on the latter date it was further extended to November 1, 1912. These extensions, together with the acknowledgment of the receipt of the one hundred dollar payment, were indorsed in writing on the back of the original written option, and signed by Mrs. Moore. In evidencing the second extension of time—that is, from October 19 to November 1, 1912—the words "October nineteenth" were erased and the words "November first" inserted by interlineation in lieu thereof, the indorsement "M. M." (the initials of the owner Maud Moore) being subjoined thereto.

The specific contention is that the contract as alleged and proved related entirely to the original term of the option, and that "there is no evidence of any agreement covering extended time or new options"; that, since "it was a condition precedent under the contract as alleged and found that an excess or profit should be realized by the defendant on exercising the option and reselling the property at an ad-

vanced price," it was necessary to prove that that condition had been fulfilled, and that there was a failure of proof that said condition had been fulfilled, it "appearing that the purchase was not made under the option, but was made after it ceased to have any legal or binding effect."

It is not necessary to restate here the argument advanced by appellant in support of the above stated propositions. We deem it sufficient to say that our opinion is that the purchase of the Moore land by the defendant was under the option procured for it by the plaintiff. The payment by the defendant of one hundred dollars on account of the first payment required to be made by the option agreement upon the exercise by the defendant of its right of option thereunder was made before the term of the option, as procured by the plaintiff for the defendant had expired. The act and fact of the payment by the defendant and the acceptance by the owner of the one hundred dollars on the purchase price of the ranch operated, *ipso facto,* as an exercise by the defendant of its optional right and the option agreement as such thereupon became *functus officio,* and likewise became a contract for the sale of the ranch mutually binding upon Moore and the defendant. (*Smith* v. *Bangham,* 156 Cal. 359, [28 L. R. A. (N. S.) 522, 104 Pac. 689] ; *Menzel* v. *Primm,* 6 Cal. App. 205, [91 Pac. 754].) There being then no option agreement in existence, the extensions referred to, when made, could not have related to the "term" of the option agreement, but had reference entirely to the time to which was deferred the payment of the balance of the first payment required by the option agreement to be made upon the exercise by the defendant of its optional right thereunder. Of course, it will not be denied that the defendant and Mrs. Moore, after the former had accepted or exercised its optional right, or upon the exercise thereof, could make such further or different arrangements as they pleased as to the terms of payment of the purchase price, and, if they did do so, it cannot well be said that the effect thereof was to create a new option agreement. Such arrangements would simply mean that new or different terms had been introduced into the contract of sale obtained by the exercise by the defendant of its optional right secured to it by the option agreement as procured for it by the plaintiff. In other words, Mrs. Moore had the right to waive any default as to the first payment, if default

there was, or to extend the time of such payment upon the acceptance of the optional right by the defendant, and such action on her part could not affect the right of the plaintiff to claim as against the defendant the stipulated compensation for his services in procuring for it the option agreement from and under which it obtained from Mrs. Moore the contract of sale and purchase.

The proposition, presented in connection with those last above considered, that the finding of an excess or profit on the sale by the defendant of the Moore ranch is not supported, because it appears from the evidence that the "defendant remains liable for $12,000 of the mortgage debt given for the purchase price," and, therefore, "it cannot yet be told that there will be any excess or profit," is devoid of merit. The predicate of the argument in support of this point is that, under the agreement declared upon by the plaintiff, one of the conditions upon which the plaintiff was to be paid one-half of the excess or profit realized from the sale of the ranch was that the fund from which the plaintiff was to be so paid was to be that created by such excess or profit and actually received by the defendant. We do not so read the pleaded agreement. As to that proposition, the complaint alleges that the defendant agreed "that if plaintiff would secure the option from said Maud Moore for the purchase and sale of said land for the sum of $25,000, defendant . . . would under said option endeavor to effect a sale of said land for a sum in excess of $25,000, and in the event of such sale would divide the amount received for said land in excess of $25,000 equally with plaintiff, and it was then and there agreed . . . that if plaintiff procured the option as aforesaid from said Maud Moore . . . said defendant would upon the sale of said land for any sum in excess of $25,000 pay to said plaintiff one-half of said excess sum . . . as his commission and share of the profits accruing under said option." Thus it will be noted that there is no provision in the agreement that the payment of plaintiff's share of the profits on the sale of the ranch was to be postponed or deferred beyond the time at which the sale of said ranch was actually effected or completed. As before suggested, the amount of the excess and plaintiff's share thereof could be known immediately upon the sale being made. The defendant could not require the plaintiff to wait for the payment of his one-half of the

profits realized from the sale until the mortgage debt was extinguished, unless there was a covenant in the agreement to that effect, and, as seen, there was no such covenant in the agreement. Moreover, the defendant had received all but twelve thousand dollars of the sum for which it sold the land to its grantee, and had paid out of the profits it derived from the sale the expenses incurred in negotiating and completing the sale. Therefore, as above stated, it is manifest that it was not only in possession of the fund from which the plaintiff's share was to be paid, but, obviously, knew precisely how much the excess or profit amounted to.

The option on the Campbell ranch was in writing and to the plaintiff, who assigned it by writing to the defendant, under a preceding oral agreement by the defendant that plaintiff, upon procuring said option for it, would be paid by it the sum of two hundred dollars. What has been said herein with respect to the oral agreement between the parties for the procurement of the option on the Moore property applies with equal pertinency and force to the oral agreement between them for the procurement by the plaintiff of the option on the Campbell property.

The several assignments of alleged error involving objections to rulings admitting certain testimony are connected with the questions above discussed, and further consideration thereof herein is, therefore, unnecessary.

The judgment appealed from is affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 16, 1918, and the following opinion then rendered thereon:

THE COURT.—The application for a hearing in this court, after decision in the district court of appeal of the third appellate district, is denied.

In denying the application, we deem it proper to say that we are not prepared to hold that subdivision 6 of section 1624 of the Civil Code is not applicable in the case of a simple contract between a real estate agent or broker and a proposed purchaser to obtain an option for the purchase of real estate

by the purchaser. The opinion clearly shows that this was in substance a joint venture on the part of plaintiff and defendant for the sale of real property of a third party, and the distribution of the profits between them. The district court of appeal was clearly right in concluding that subdivision 6 of section 1624 of the Civil Code does not extend to agreements between brokers to co-operate in making sales for the sake of the commission or profits and that this substantially was such a case.