[No. 13277. In Bank. — August 10, 1892.]

## S. G. PHELPS, APPELLANT, *v.* J. E. BROWN ET AL., RESPONDENTS.

VENDOR AND PURCHASER — RESCISSION OF CONTRACT OF SALE — RECOVERY OF PURCHASE-MONEY PAID — RECOUPMENTS OF DAMAGE. — When a contract of sale and purchase of lands is abandoned or rescinded by the parties, the vendee, though in default, may recover back installments of the purchase-money paid, less the actual damage to the vendor, occasioned by his breach of the contract.

ID. — RECOVERY FROM AGENTS OF VENDEE — ESTOPPEL OF AGENT. — Where a firm of real estate agents, who negotiated a sale and purchase of land, received from the vendee for the vendor a check for a sum of money as a deposit or first payment upon the land, and took a receipt therefor from the vendor, as the agents of the vendee, and upon an abandonment and rescission of the contract by the parties, received back the amount of the check from the vendor, delivering back and canceling their receipt therefor as agents of the vendee, they are estopped from denying an agency for the vendee, and the vendee is entitled to recover back from such agents the amount so received by them.

APPEAL from a judgment of the Superior Court of Santa Clara County.

The facts are stated in the opinion of the court.

*Jackson Hatch, T. B. Laine,* and *Laine & Hatch,* for Appellant.

*Crandall & Biddle,* for Respondents.

BEATTY, C. J. — This is an action by the vendee in a contract for the purchase and sale of lands to recover back the sum of five hundred dollars, paid at the date of the contract as a forfeit. The decision of the superior court was against the plaintiff, and she appeals from the judgment on the judgment roll.

The following are the material facts disclosed by the record: "In June, 1887, one Norton and wife owned a tract of land in Santa Clara County, which was encumbered by a mortgage for nine thousand dollars, and the plaintiff, a married woman, owned a house and lot in the city of San José. The Nortons wished to exchange their land for the lot of plaintiff, and to negotiate the exchange they employed the defendants, who were real estate agents doing business in San José, as partners under the firm name of Brown & Ensign, and orally agreed to pay them five hundred dollars as a commission if the exchange should be made. The proposition of the Nortons was, that they would convey their land to the plaintiff for twenty thousand dollars, and that in payment thereof she should assume and pay the mortgage on the land, and should convey her lot to them for six thousand five hundred dollars, and pay to them the balance of four thousand five hundred dollars in cash when the deeds should be executed. This proposition was put in writing and given to the defendants, and they delivered it to the plaintiff. She was willing to accept the proposition and make the trade if she could realize $6,750 for her lot, and not otherwise. The defendants then agreed to pay her $250 out of their commissions when the trade should be consummated. This arrangement was satisfactory, and she thereupon drew her check upon a local bank for five hundred dollars, payable to the Nortons, and handed the same to the defendants as a deposit or first payment. The defendants on the same day gave the check to the Nortons, who executed a receipt therefor, closing with the words, 'trade to be finished within two weeks from date, or this deposit to be forfeited without recourse. Title to prove good or no

sale, and this deposit to be returned.' A few days later
the defendants handed back to the plaintiff her check,
and she thereupon gave to them, in place of the check,
five hundred dollars in money, which they at once paid
over to the Nortons. Subsequently it appeared from the
abstract of title furnished by the plaintiff that an attach-
ment issued in an action against her husband had been
levied on her property; and on learning this the Nortons
refused to accept her deed, or to carry out the proposed
exchange, unless she would have the attachment removed.
She offered to give them a warranty deed, but refused to
procure the discharge of the attachment. The Nortons
were ready and willing to complete the trade, and ten-
dered a deed of their property to plaintiff, but she never
offered to convey to them an unencumbered title to her
property, and never tendered or offered to pay the bal-
ance of the purchase-money. Thereupon the Nortons
abandoned the trade, and without the knowledge of
plaintiff, and without any directions as to the disposition
to be made of the money, returned the five hundred dol-
lars to the defendants, and the latter returned to them
their receipt, with an indorsement thereon as follows:—

"'Money returned, and their receipt is canceled.

"'July 25, 1887.        BROWN & ENSIGN.'

"'We agree to release the signers of this receipt from
any expense, legal or otherwise.

"'BROWN & ENSIGN.'"

Upon these facts two questions arise: 1. Was the
plaintiff entitled to receive her money back when the
Nortons abandoned the trade? 2. If so, can she recover
it back from these defendants?

It is assumeed throughout the argument, and we shall
so assume without deciding, that the failure or refusal
of plaintiff to clear her land of an attachment levied upon
it in a suit against her husband was a failure or refusal
to do something which her contract bound her to do;
and that she thereby placed herself in default exactly
the same as if she had refused to pay an installment of

the purchase price when due.  But assuming this to be
so, and that the Nortons were not in default when they
abandoned the trade and put an end to the contract, the
plaintiff nevertheless immediately became entitled to
receive back the five. hundred dollars which she had
paid, less the actual damage caused by the breach of her
contract.  This proposition is fully sustained by two
recent decisions of this court.  (*Cleary* v. *Folger*, 84
Cal. 316; 18 Am. St. Rep. 187; *Drew* v. *Pedlar*, 87 Cal.
443; 22 Am. St. Rep. 257.)  Respondents, however, insist
that these decisions are in conflict with later as well as
earlier decisions of this court; citing *England* v. *Rogers*,
41 Cal. 420; *Scott* v. *Glenn*, 87 Cal. 221; *Dennis* v. *Strass-
burger*, 89 Cal. 583; *Easton* v. *Montgomery*, 90 Cal. 307;
*Newton* v. *Hull*, 90 Cal. 487; *Anderson* v. *Strassburger*, 92
Cal. 38.

It is true that in the case of *Cleary* v. *Folger*, 84 Cal.
316, 18 Am. St. Rep. 187, which was decided in Depart-
ment, and never brought under review of the court by
petition for hearing in Bank, it was held, contrary to the
earlier and later decisions, that in case of mutual and
dependent stipulations to be concurrently performed,
both parties are in default if the time of performance
passes without tender of performance on either side, and
that the contract is at an end.  As to this proposition,
that case has been expressly overruled in *Newton* v. *Hull*,
90 Cal. 492, and the correct rule of the earlier cases re-
stored; but the further proposition involved and decided
in that case, and in *Drew* v. *Pedlar*, 87 Cal. 443, 22 Am.
St. Rep. 257, viz., that when a contract of sale and pur-
chase of lands is abandoned or rescinded by the parties,
the vendee, though in default, may recover back install-
ments paid of the purchase-money, less the actual dam-
age to the vendor occasioned by his breach of contract,
has never been reversed or modified.  In *Drew* v. *Pedlar*,
87 Cal. 443, 22 Am. St. Rep. 257, the parties expressly
stipulated that one thousand dollars, paid at the date of
the contract, should be retained by the vendor as liqui-
dated damages in case of failure by the vendee to com-

plete the purchase, and this stipulation was held void
under the statute. In *Cleary* v. *Folger*, 84 Cal. 316, 18
Am. St. Rep. 187, it was held, and we think correctly,
that a stipulation to forfeit the first payment in case of
failure by the vendee to complete the purchase was in
effect a stipulation for liquidated damages, and void. In
both cases it was held that the vendee could recover, sub-
ject to the right of the vendor to recoup his actual damage.

In this case the plaintiff's right to recover does not
depend on the proposition erroneously decided in *Cleary*
v. *Folger*, 84 Cal. 316, 18 Am. St. Rep. 187; for the con-
tract with the Nortons was ended by their voluntary
abandonment of it in consequence of her failure to clear
the title to the property which she was to convey in the
exchange. The contract was at an end, and the Nortons
were left with plaintiff's money in their hands. There is
no claim in the pleadings or finding by the court that
they were actually damaged by the failure of plaintiff to
complete the transaction; they could not retain the five
hundred dollars as liquidated damages, and therefore it
became their duty to pay it back.

There is not the slightest conflict in the decisions of
this court as to these points. In each of the several cases
cited and relied on by respondents in which the vendee
of land was defeated in an action to recover purchase
money, the decision went upon the ground that the ven-
dee was not only not in default, but the contract was
still in force. (*Scott* v. *Glenn*, 87 Cal. 221; *Dennis* v.
*Strassburger*, 89 Cal. 583; *Easton* v. *Montgomery*, 90 Cal.
307; *Anderson* v. *Strassburger*, 92 Cal. 38.)

The respondents endeavor to distinguish *Drew* v. *Ped-
lar*, 87 Cal. 443, 22 Am. St. Rep. 257, from this case,
upon the ground that there it appeared that the vendee,
long after he was in default, and the vendor had elected
to treat the contract as abandoned and rescinded, had
made a tardy offer of performance. But while the fact
was as the respondents claim, the decision did not pro-
ceed upon that distinction, but upon the broad ground
above stated, as to which this case is practically the

same.   We are entirely satisfied with the correctness of
the decision in *Drew* v. *Pedlar*, and upon that authority
hold that when the Nortons abandoned their contract
the plaintiff was entitled to receive her five hundred dol-.
lars back.

As to the second question above stated, the respond-
ents claim that there can be no recovery against the
defendants, even if the Nortons were liable to refund
the purchase-money paid; and they rely upon the de-
cision in *Bogart* v. *Crosby*, 80 Cal. 195.   But this case is
very different from that.   There the defendants .were
agents for the vendors exclusively, and they claimed the
money as their own against both parties to the contract.
They did not receive it under any agreement, express
or implied, to pay it over to the vendee or to assume the
liability of the vendor.   Here the facts found by the
superior court fully justified its conclusion, "that the de-
fendants, on receiving the five hundred dollars from the
Nortons, took their place as to the money and assumed
all liabilities as to the plaintiff that the Nortons had in-
curred."

But more than this, the findings show clearly that the
defendants received the money as plaintiff's agent and
for her use.   They held the receipt of the Nortons as her
agents, and when they gave it up they canceled it as
her agents.   Unless they were her agents for that pur-
pose, they had no right to deliver up and cancel that re-
ceipt on return of the money; and having assumed to
represent her for one purpose, they cannot be heard to
say they did not represent her for the other.

The judgment is reversed and the cause remanded,
with directions to the superior court to enter a judgment
for the plaintiff on the findings.

DE HAVEN, J., McFARLAND, J., SHARPSTEIN, J., PATER-
SON, J., HARRISON, J., and GAROUTTE, J., concurred.