[Civ. No. 12802. First Dist., Div. Two. Feb. 1, 1946.]

LILLIAN A. KROBITZSCH et al., Respondents, v.
GEORGE E. MIDDLETON, Appellant.

Keyes & Erskine, A. P. Black and Edwin H. Williams for Appellant.

Elliot M. Epsteen, Charles C. Boynton and Boynton & Boynton for Respondents.

GOODELL, J.—Plaintiffs sued to quiet title to a piece of property in San Gregorio, San Mateo County, consisting of about 318 acres, known as the "K Beach" or "Driver" Ranch. It is bounded on the west by the ocean, on the east by the county highway, and is traversed throughout its entire length, a distance of about one mile, by the right of way of the former Ocean Shore Railroad. Prior to the construction in 1940 of the Ocean Shore Boulevard across the property, access to the ocean beach and the San Gregorio Lagoon, a picnicking and recreation area, was by means of a private toll road extending through the property from the county highway.

On June 6, 1937, by a contract in writing acknowledging receipt of a $500 down payment, R. W. Krobitzsch, since deceased, and his wife, Lillian A. Krobitzsch, gave George E. Middleton, the appellant herein, an option to purchase the property for $50,000, payable as follows: "The further sum of $4500 on or before July 6, 1937, and $2500 every six months thereafter until the full purchase price is paid, together with interest at the rate of six per cent per annum on the unpaid balance." Time was declared to be of the essence.

The appellant paid several installments, the last one on April 5, 1939, in the sum of $1,733.12. He also paid certain taxes, and certain premiums on fire insurance policies covering buildings on the property. The respondents concede that the various payments made by the appellant plus the money retained by them come to $19,525.

On August 4, 1941, the appellant wrote to one of the attorneys for the Krobitzschs, asking for an itemized statement of rents paid to the Krobitzschs by tenants and for a statement of what was claimed to be still due from appellant. The next day the Krobitzschs wrote him declaring the contract null and void and stating that all his rights thereunder were terminated. Almost a year later, on July 14, 1942, this suit was filed. The appellant filed an answer and cross-complaint wherein he alleged, *inter alia,* that he was the owner of equitable title to the property. He pleaded that the sixty-day notice (required by paragraph 9 of the agreement) had not been given; that $17,082.25 had been paid by him, and that no accounting of other sums had been rendered to him. He claimed that for these and other reasons he was not in default.

The appellant's prayer was that the court should "find and determine that said agreement dated June 6th, 1937, is in full force and effect," and for general relief. The court made findings in favor of the plaintiffs and entered a decree quieting their title.

Several contentions in this case revolve around paragraph 9 of the agreement which reads as follows:

"9. In the event of default of any of the payments due hereunder on the dates and in the manner herein provided for, first parties may at their option declare this agreement null and void and of no effect, and shall keep and retain as rental, depreciation and liquidated damages, any and all monies paid under the terms hereof, and provided further first parties shall have no right or claim against second party, except to the retention of such monies so paid, and to declare this agreement null and void as aforesaid. Sixty days notice of any such default shall be given to second party by registered mail at the address given below or any change thereof sent to first parties by registered mail."

The cross-complaint characterizes the writing of June 6, 1937, as a contract of sale. The answer thereto denies this and alleges that it is an option. This the court found it to be. The provision that the second party shall have "the exclusive right and option to purchase on or before July 6, 1937," seems to have been designed to fix the time for the exercise of the option. The $4,500 payment called for on that date was a sizable one, and it is difficult to see why the words "to purchase on or before July 6, 1937," were used had it not been the intention that such payment then made would bring into existence a binding bilateral contract. (See *Menzel* v. *Primm*, 6 Cal.App. 204, 209 [91 P. 754]; *Howard* v. *D. W. Hobson Co.*, 38 Cal.App. 445, 458 [176 P. 715]; *Smith* v. *Bangham*, 156 Cal. 359, 363 [104 P. 689, 28 L.R.A.N.S. 522]; *Estate of Fulmer*, 203 Cal. 693, 696 [265 P. 920, 58 A.L.R. 430]; 25 Cal.Jur. p. 525, § 51.)

However, as this is a suit to quiet title it is not necessary to decide herein whether, as held by the trial court, the writing of June 6, 1937, remained a mere option or whether, on July 6, 1937, when the $4,500 was paid it became a binding contract of purchase and sale.

Two later agreements were made, the first on February 15, 1940, the second on June 4, 1940. In the cross-complaint (in

which they are set out) the appellant alleges that both are void for lack of consideration. Appellant's second point on appeal attacks the agreement of February 15, 1940, on that ground. The importance of this point will appear later on, particularly when we discuss in detail the provisions of paragraph 9 of the original agreement.

It is of course true, as held in *Main Street etc. R. R. Co.* v. *Los Angeles Traction Co.,* 129 Cal. 301 [61 P. 937] and in *Anderson* v. *Adler,* 42 Cal.App. 776 [184 P. 42], cited by appellant, that a supplemental agreement either adding to or varying the terms of the original contract, so as to impose new and onerous burdens upon one of the parties, requires a consideration to support it.

On February 15, 1940, $5,000 was overdue, and the writing of that date opens by admitting it. It reads in part as follows:

"Under the option agreement of June 1937, Middleton is in default in payment due July 6, 1939; and further in default of payment due January 6, 1940, plus interest. Under said agreement Krobitzsch has the right to serve notice of default and take advantage of the provisions of paragraph 9.

"In consideration of Krobitzsch's forbearance to serve such notice of default and take advantage of the forfeiture provisions of said paragraph 9, and at Middleton's instance and request, this agreement, termed 'Supplemental Agreement,' is made. The consideration is Krobitzsch's forbearance to take advantage of said provisions of paragraph 9. . . .

"On or before February 21, 1940, all current taxes and back taxes on the property . . . together with all penalties due to date, shall be paid by Middleton.

"On or before April 5, 1940, all taxes then due on said property shall be paid by Middleton at the place and places where due. . . .

"Upon payment by Middleton of all taxes and insurance as above provided on or before the dates particularly specified, then Middleton is granted an extension of 60 days from and after January 6, 1940, in which to make the payments now in default and due July 6, 1939, and January 6, 1940, respectively."

In addition to the foregoing promises appellant bound himself to do certain things and to pay certain expenses (discussed later) in connection with the taking by condemnation of part of the property.

By the original agreement he had not been obligated to pay

any of the taxes mentioned in this supplementary agreement.

It is apparent from a reading of the promises of appellant and of the paragraph last quoted, that by this February 15, 1940 agreement, signed by R. W. and Lillian A. Krobitzsch as well as by Middleton, mutual promises were exchanged by the parties. Each side agreed to do, or not to do, something.

The only case cited by the appellant on this point is *Strong* v. *Sheffield,* 144 N.Y 392 [39 N.E. 330], where a wife endorsed a demand note of her husband's upon this promise by the payee: "I will hold it until such time as I want my money. . . ." The appellant argues that this case and other authorities (none of which, however, are cited) "clearly establish that where forbearance is given . . . *the forbearance must be for a considerable period of time, otherwise, it cannot be regarded as any consideration." Strong* v. *Sheffield* does not so hold and we are sure that no case so holding can be found. ■ It is settled law in California that "Any suspension or forbearance of a legal right constitutes a sufficient consideration. . . . Even though the forbearance is for one day only, there is a sufficient consideration as the law does not weigh the quantum." (19 Cal.Jur. p. 842, § 37; *Whelan* v. *Swain,* 132 Cal. 389 [64 P. 560]; *Adolph Ramish, Inc.* v. *Woodruff,* 2 Cal.2d 190, 207 [40 P.2d 509, 96 A.L.R. 1146]; *Bank of America* v. *Hollywood Imp. Co.,* 46 Cal.App.2d 817, 822 [117 P.2d 13].) In *Strong* v. *Sheffield* the court said: ". . . . there was no agreement to forbear for a fixed time, but an agreement to forbear for such time as the plaintiff should elect" and "It would have been no violation of the plaintiff's promise if, immediately on receiving the note, he had commenced suit upon it." The agreement of February 15, 1940, was supported by a sufficient consideration.

■ One of the chief points relied on by appellant is that the eminent domain proceeding created an encumbrance which rendered the respondents "completely helpless and hopeless of conveying a perfect title" (164 Cal. 449) and that the destruction of San Gregorio lagoon, the elimination of the toll road revenue and the taking by the state of the southern and "strategic" end of the railroad right of way did likewise, and greatly impaired the value of the property. He relies upon *Hunt* v. *Inner Harbor Land Co.,* 61 Cal.App. 271 [214 P. 998] and *Ogren* v. *Inner Harbor Land Co.,* 83 Cal.App. 197 [256 P. 607] (in both of which, after a contract of sale had been

made, the land in question was condemned) also upon *Prentice v. Erskine*, 164 Cal. 446 [129 P. 585]; *Conlin v. Osborn*, 161 Cal. 659 [120 P. 755] and *Koshland v. Spring*, 116 Cal. 689 [48 P. 58]. The rule of these cases is thoroughly settled, but it can have no application here for the reasons, first, that the appellant made no attempt to rescind, but stood on his contract, and, second, he definitely and expressly accepted and acquiesced in the situation which arose from the condemnation proceeding with eyes open to all its consequences. The second reason probably explains the first. In other words, such acquiescence makes the appellant's failure to attempt to rescind understandable.

The appellant's acceptance of the situation presented by the condemnation suit, and his acquiescence therein, is manifested by the supplementary agreement of February 15, 1940, already discussed. On December 13, 1939, which was two and a half years after the original contract was made, the State of California filed an eminent domain proceeding to condemn the right of way for the Ocean Shore Boulevard through this property which ultimately took 27.54 acres. Two days later, on December 15, 1939, a writ of possession was issued. Exactly two months thereafter the agreement of February 15, 1940, was made, so it appears that everybody concerned then knew that the highway department was in possession. The agreement is illuminating on that point. It reads in part as follows: "Middleton approves and expressly consents to the granting by Krobitzsch to the State of California the right to use and pass over the toll road on the property described in the June 1937 agreement during the construction by the said State of a state highway." It further provides: "It is understood that certain engineering expenses and costs of litigation, etc. may be incurred in the determination of the damage done to the property by reason of the state highway built across the same. Middleton agrees to personally pay all expenses incurred by reason thereof and in the event that Krobitzsch retakes the said property and cancels all agreements by virtue of any default of Middleton, then Middleton agrees to pay for all such legal, engineering and other expenses which may have been incurred to the time of said taking over, and to furnish to Krobitzsch a statement in writing from any engineers, attorneys or others, confirming that they will look to Middleton for any expenses or charges

which may be incurred during such time as he may be acting under said agreement.

"All moneys received from the State of California, Joint Highway District or any County arising out of the road now or hereafter to be built, whether for damages or otherwise, shall be paid to Krobitzsch and applied on the last amounts due in point of time by Middleton under the original agreement, and governed in all other respects by the terms and conditions thereof."

This point was not pleaded or raised in the trial court. On February 15, 1940, when the agreement was made the condemnation suit had been pending for two months, and possession of part of the property had been taken by the state. There was no attempt then, or at any later time, to rescind. The obligations assumed by the appellant by that agreement were utterly inconsistent with a rescission and those obligations were assumed right in the middle of an arrearage of $5,000 and with eyes open to the possibility, expressed therein, that the Krobitzschs might retake the property and cancel "all agreements by virtue of any default of Middleton." Such acquiescence of the appellant certainly precludes him from now urging this point for the first time on appeal in a belated attempt to put the vendors in default.

Appellant presents the further point that the respondent "secured the signature of Middleton to the supplemental agreement of February 15, 1940, by leading him to believe that all installment payments could remain in abeyance until the termination of the highway litigation. . . ."

The record contains no evidence whatever to support this contention.

We might add that it is difficult to see how this contention can be urged when the language of the agreement of February 15, 1940, itself shows it was made for the purpose of thereby granting the appellant "an extension of 60 days from and after January 6, 1940, in which to make the payments now in default and due July 6, 1939, and January 6, 1940, respectively."

■ The appellant contends that "The entire purchasing agreement is illegal for the reason that it provides for liquidated damages in a case where the measure of damage is readily computable." This attack is directed to the provision that in case of default the sellers "shall keep and retain as

rental, depreciation and liquidated damages, any and all monies paid under the terms hereof. . . .''

A complete answer to this contention is found in *Glock* v. *Howard etc. Co.*, 123 Cal. 1, wherein at pp. 11-12 [55 P. 713, 69 Am.St.Rep. 17, 43 L.R.A. 199] the court says: ''When an equitable showing is not made to excuse the breach, the vendor has the right in equity, as he always has at law, to retain the moneys paid by the vendee. Therefore, we have said that it matters not in such contracts that the parties have declared that the vendor may retain the moneys paid as stipulated damages. The name which the parties thus give does not alter the fact nor change the vendor's rights. If it be said that the clause for stipulated damages is void, still the vendor is entitled to retain the money.'' Expression is given to the same thought in the concurring opinion at pp. 20-21.. Interesting comments on the Glock case are found in *Martinelli* v. *Hogrefe*, 123 Cal.App. 438 [11 P.2d 412], *Sawyer* v. *Sterling Realty Co.*, 41 Cal.App.2d 715 [107 P.2d 449] and *Kelso* v. *Ulrich*, 67 Cal.App.2d 698 [155 P.2d 407]. See, also, 25 Cal.Jur. 790.

In support of this contention the appellant cites numerous cases. With one exception, none of them involves an attempt by a vendee to recover payments made on the purchase price of real property and none of them asserts principles contrary to the doctrine of *Glock* v. *Howard etc. Co., supra.* They involve suits upon bonds conditioned upon performance of leases and other contracts by third parties (*Weinreich Estate Co.* v. *A. J. Johnston Co.*, 28 Cal.App. 144 [151 P. 667]; *Stephens* v. *Daugherty*, 33 Cal.App. 733 [166 P. 375]; *Los Angeles etc. Association* v. *Pacific Surety Co.*, 24 Cal.App. 95 [140 P. 295]); deposits to insure performance of executory contracts (*McInerney* v. *Mack*, 34 Cal.App. 153 [166 P. 867]; *Green* v. *Frahm*, 176 Cal. 259 [168 P. 114]; *Thomas* v. *Anthony*, 30 Cal.App. 217 [157 P. 823]); liquidated damages in an agreement for the sale of personal property (*Pacific Factor Co.* v. *Adler*, 90 Cal. 110 [27 P. 36, 25 Am.St.Rep. 102]); provisions for the deduction of a certain sum as liquidated damages for each day's failure of performance of a contract. (*Consolidated Lumber Co.* v. *Los Angeles*, 33 Cal.App. 698 [166 P. 385]; *Long Beach etc. District* v. *Dodge*, 135 Cal. 401 [67 P. 499]; *Patent Brick Co.* v. *Moore*, 75 Cal. 205 [16 P. 890]). The exception referred to, *Phelps* v. *Brown*, 95 Cal. 572 [30 P. 774], wherein the vendee was allowed to recover a deposit or initial payment on the purchase price, was expressly distinguished in

the Glock case (123 Cal. 14) on the ground that it ''affords a typical instance'' of rescission by the vendor.

■ The eighth point made by the appellant is that ''Krobitzsch having continually waived the time essence clause it was thereafter impossible for him to give Middleton a valid sixty day notice of forfeiture until he had first re-instated the 'time essence' clause.''

That the respondents accepted payments after they were due is certainly true, but all such payments were made prior to February 15, 1940. The last payment purporting to be on account of an *installment* was of $1,733.12 made on April 5, 1939, which apparently completed, three months late, the payment due on January 6, 1939. Thereafter, on July 6, 1939, another installment of $2,500 fell due, and *thereafter,* on January 6, 1940, still another, of $2,500. The agreement of February 15, 1940, after admitting these two defaults further admits that ''Under said agreement [of June 6, 1937] Krobitzsch has the right to serve notice of default and take advantage of the provisions of paragraph 9.'' The agreement of February 15, 1940, served effectively to restore the time clause of the original agreement (25 Cal.Jur. p. 618), and therein the parties fixed their own time for the appellant's reinstatement at 60 days from January 6, 1940, which was the period of the extension. The appellant could reinstate himself only by paying the two defaulted installments within that time. The 60 days from January 6, 1940, were by that agreement being given to the vendee to clean up his defaults, and the parties therein dispensed with the necessity of a further 60-day notice (under paragraph 9) in case the vendee did *not* clean up his defaults, by the provisions which the appellant attacks as ''ambiguous, obscure, contradictory and uncertain.''

After the provisions whereby the appellant agreed to pay certain taxes and those whereby the Krobitzschs granted appellant the extension ''in which to make the payments now in default and due July 6, 1939, and January 6, 1940 respectively,'' the agreement of February 15 reads:

''The waiver by Krobitzsch of any breach of any term, covenant or condition herein contained or of the original agreement of June 1937, shall not be deemed to be a waiver of any subsequent breach of the same or any other term, covenant or condition in either of said agreements contained.

''Time is of the essence hereof and if Middleton, for any

reason, fails to comply with any of the terms, or conditions in this Supplemental Agreement contained, then it is expressly agreed between the parties that *the notice of default provided in paragraph 9 of said June 1937 agreement becomes immediately operative in the same manner and to the same extent as though the same were personally served and received by said Middleton."* [Emphasis added.]

"If Middleton fully and faithfully complies with all the terms and conditions hereof and on the precise dates herein agreed upon, then he shall be relieved of the automatic notice of default provision herein provided for."

The language of the agreement discloses the clear intent that the appellant be obligated to pay the two overdue installments within the extension period. The object and purpose of the appellant in entering into the agreement was to halt the service on him at that time of the sixty-day notice then threatened. The opening paragraphs already quoted show this. The primary purpose, then, of the agreement was to grant the sixty-day extension from the last installment date (January 6, 1940) for the payment of the two installments, and if it were not the intent to bind appellant to make those payments within that time the execution of the agreement would have been meaningless. Neither of the two defaulted payments was made within the 60-day extension period (nor since) and under the plain meaning of the agreement the "automatic notice of default" came into play, and the 60-day provision of paragraph 9 became superseded.

We see nothing ambiguous or obscure about the language. What has just been said also answers appellant's (seventh) point that no sixty-day notice was ever served. Under the circumstances just related it did not have to be.

It cannot be claimed that after February 15, 1940, any *installment* payment was accepted for certainly none was tendered. On August 5, 1941, when the letter was sent to appellant, five semiannual installments were overdue, aggregating $12,500, which included the two installments for the payment of which the extension was granted.

The appellant paid certain taxes and penalties on or before February 21, 1940, and certain other taxes on or before April 5, 1940. Such payments however cannot be treated as belated acceptances of overdue obligations, for he was not obligated before February 15, 1940, to pay them, and his

agreement then to pay them was part of a fresh consideration for the extension which he then sought and got.

■ This brings us to the $650 payment. One Quilici owed $650 as rental for part of the ranch. On June 4, 1940, the second supplemental agreement was made wherein it was agreed that the Krobitzschs "may collect and receipt for the rentals aforesaid; and that the acceptance thereof shall not operate nor be deemed to waive any breach of any covenant or covenants by said second party [Middleton] to be done or performed in any of his agreements relating to the aforesaid property and in particular, that Supplemental Agreement between the same parties hereto dated February 15, 1940; nor shall the same operate nor be deemed nor considered as a release, estoppel nor waive any default or defaults on the part of the second party. . . ." The language just quoted in our opinion adequately safeguarded this payment from any claim that the acceptance of it created a waiver or estoppel.

■ The allegations of waiver and estoppel in the appellant's cross-complaint were denied, and the court by its findings negatived these claims of waiver. "Unless but one inference can be drawn from the evidence, waiver and estoppel are questions for the jury or the trial court." (*Lowe* v. *Copeland,* 125 Cal.App. 315, 322 [13 P.2d 522], citing 27 R.C.L., Waiver, p. 912; *Kerr* v. *Reed,* 187 Cal. 409 [202 P. 142]; *Parke* v. *Franciscus,* 194 Cal. 284 [228 P. 435].)

The appellant paid an insurance premium of $73.50 on December 14, 1940, respecting which the record shows the following:

"Q. Did they [conversations] extend as long as the time when you got the insurance policy in 1940 . . . on which you paid $73.50 premium?

"A. No, they didn't go up to that time. I didn't hear from Mr. Krobitzsch so I went ahead and paid the insurance premiums. I didn't hear anything from him."

Again, referring to the payment of the $73.50:

"Q. Was that done with the knowledge and consent of Mr. Krobitzsch? A. No.

"Q. The insurance policy was issued in your joint name? A. Yes, with the consent of Mr. Krobitzsch.

"Q. And the policy was delivered to Krobitzsch? A. Yes.

"Q. So he actually had possession of it and accepted the policy? A. Yes.

"Q. That was on December 14, 1940? A. Yes."

Nothing more than this appears in the record respecting the circumstances. It is clear that the policy was paid for by Middleton without Krobitzsch's knowledge. If the waiver of a default was to be predicated on this transaction it was incumbent on the appellant, who claimed the waiver, to prove it by such evidence as did not leave the matter doubtful or uncertain (25 Cal.Jur. p. 932, § 7). The record does not show the circumstances surrounding the payment, and the trial judge was not convinced, for he found there was no waiver.

 The record shows that some question arose respecting water rights on the property, also as to the highway crossing the lagoon by a fill instead of by a span, and that there were conversations between Messrs. Krobitzsch and Middleton on both subjects. There is considerable argument in the appellant's briefs that such dealings and conversations showed a course of conduct inconsistent with a forfeiture. Counsel for respondents repeatedly and consistently pressed for the fixing of the dates and times of these discussions but without much success other than to finally develop that two public meetings of interested property owners were held, one on the water rights questions, the other as to the crossing of the lagoon, both around May 20, 1940. Granting that there were such discussions, they were as compatible with a forfeiture of appellant's rights as with a continuance of the contract for in either case Krobitzsch was vitally concerned. Not only were the times not definitely fixed, but the testimony was so vague and indefinite that the judge remarked "I would kind of like to get this myself. I don't quite follow it through, to be perfectly frank. You will have to tie this up a little better. I don't see it yet myself."

As in the case of the insurance premium the judge was not convinced that the acts and conduct now relied on showed any waiver or estoppel, and the burden of convincing him was on the appellant.

We are satisfied that nothing was done on the respondents' side after February 15, 1940, which in any way reopened the appellant's default which then admittedly existed, and which was never within the sixty-day period, or thereafter, cured.

 The appellant also claims that the agreement was repudiated or abandoned or rescinded because of the respondents' letter of August 5, 1941 (relying, in that behalf, on *Gaume* v. *Sheets*, 181 Cal. 119 [183 P. 535]). There was no

such claim in the trial court by pleading or otherwise. The case was tried on the theory that the two supplementary agreements were void for lack of consideration; that the 60-day provision therefore retained its full efficacy and the notice of August 5, 1941, was insufficient to put the appellant in default. The allegations of the cross-complaint and its prayer for an adjudication that the contract remained in full force and effect show this, and are utterly inconsistent with the claim now asserted for the first time on appeal of repudiation, abandonment, or rescission. The claim under this head that the "respondents must return to appellant all monies paid by him, together with interest thereon" is fully answered by *Glock* v. *Howard etc. Co.*, discussed earlier.

██ There is no merit in the contention that the appellant could not be put in default until an accounting was made to him by the respondents for there is nothing in any of the three agreements showing any obligation on the respondents' side to make any accounting.

The decree is affirmed.

Nourse, P. J., and Dooling, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 1, 1946. Carter, J., voted for a hearing.