In re MEDISCAN RESEARCH, LTD., Debtor.

GREENAMYER ENGINEERING AND TECHNOLOGY, INC. a California Corporation, Appellant,

v.

MEDISCAN RESEARCH, LTD., a California Limited Partnership, Appellee.

BAP No. CC–88–1753.
No. LA–80–00915–BR.
Adv. No. LA–86–3316–BR.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted May 23, 1989.

Decided Oct. 30, 1989.

Brian R. Shumake, South Pasadena, Cal., for appellant.

Christopher M. Laquer, Jett & Laquer, Pasadena, Cal., for appellee.

Before JONES, MOOREMAN and VOLINN, Bankruptcy Judges.

JONES, Bankruptcy Judge:

Appellant, Greenamyer Engineering and Technology, Inc. appeals a bankruptcy court's refusal to enforce an amendment and note to an agreement entered into by Appellant and the debtor, Mediscan Research, ltd. We Affirm.

## FACTS

On January 17, 1986, Mediscan filed a petition for relief under Chapter 11 of the Bankruptcy Code. Mediscan is a limited partnership that was formed in 1981 to fund the development of a human temperature and monitoring device ("Project"). The research and the development of the Project was to be performed by Appellant. In order to raise funds for the Project, the general partners of Mediscan, American Principals Corporation ("APC"), published a Private Placement Memorandum ("PPM"). The PPM stated that $4,917,-500.00 was to be raised through the sale of 35 limited partnership units at $140,500.00 per unit. The PPM further provided that the investors' funds were to be held in an escrow account until all 35 units were sold. The funds were to be returned to the investors if all the units were not sold by December 31, 1981.

As of December 31, 1981, only 13.5 units were sold; however, instead of returning the investors' money, Mediscan and the Appellant entered into a Research and Development Agreement ("Agreement"). The Agreement modified Mediscan's original contract with Appellant by directing Mediscan to pay the Appellant $1,601,871.00 rather than $4,153,000.00. $1,601,871.00 is 13.5/35ths of the $4,153,000.00 provided for in the PPM. In addition, the modification, which enabled Appellant to begin performance, limited Appellant's research and development to tax deductible research and development.

About a year later, on November 17, 1982, Appellant and APC executed an amendment to the Agreement ("Amendment"). Even though Appellant's obligations under the Agreement were not changed by the Amendment, the Amendment required Mediscan to pay Appellant the original $4,153,000.00 rather than the agreed $1,601,871.00. In addition, by way of the Amendment, the remaining 21.5 units were offered and sold. APC then executed a Promissory Note ("Note") to Appellant. The Note obligated Mediscan to pay Appellant $1,953,000.00.

Shortly after the issuance of the Note, the Securities and Exchange Commission brought an action against APC alleging various violations of the federal securities laws. (*SEC v. American Principals Holdings, Inc.*, Case No. CV–84–1383 (S.D.Cal. 1984)). The court appointed a receiver who subsequently informed the investors in APC of the apparent securities violations. As a result, the limited partners of Mediscan formed Mediscan Technology, Inc., which replaced APC as general partner of Mediscan. It should be noted that in January, 1988, the Chief Executive Officer and sole shareholder of APC, W. Carl Zimmer-

man, was indicted on several counts of mail fraud based on his activities relating to APC and various investment limited partnerships.

To date, Mediscan has paid Appellant $2,204,003.00. Mediscan contends that since the research and development of the Project was completed with those funds, it is no longer indebted to the Appellant. However, Appellant contends that pursuant to the terms of the Amendment it is still owed the balance of the Note.[1] As a result of this disagreement, Mediscan filed an adversary action seeking a return of funds paid to Appellant on the grounds that the money paid was not spent for tax deductible research pursuant to the original Agreement. Appellant answered by filing a counterclaim asserting that Mediscan's Note was valid and enforceable and that due to Mediscan's breach Appellant was entitled to $1,953,000.00 plus interest at 10% per annum from January 1, 1985. After taking the matter under submission, the Honorable Barry Russell, Judge of the United States Bankruptcy Court for the Central District of California, determined that Mediscan was not entitled to a return of the funds it paid Appellant and that Appellant was only entitled to the monies it had received.[2] Appellant timely appealed.

## STANDARD OF REVIEW

This Panel reviews the bankruptcy court's findings of fact by the clearly erroneous standard of review enunciated in Fed.R.Civ.P. 52(a). *In re Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1377 (9th Cir.1985).

## DISCUSSION

a. *Whether the Agreement and Note are void for lack of consideration.*

█ Mediscan contends that an amendment to a contract which does nothing more than change the price to be paid is without valid consideration and is unenforceable. In support of its contention, Mediscan cites *Krobitzsch v. Middleton*, 72 Cal.App.2d 804, 165 P.2d 729, 731 (1946) for the proposition that an amendment is itself a contract which must be supported by independent consideration. Specifically, Mediscan argues that a modification whereby one party agrees to pay more for the same performance by the other party is not enforceable. Cal.Civ.Code § 1698. Section 1698 states:

(a) A contract in writing may be modified by a contract in writing.

(b) A contract in writing may be modified by an oral agreement to the extent that the oral agreement is executed by the parties.

(c) Unless the contract otherwise expressly provides, a contract in writing may be modified by an oral agreement supported by new consideration. The Statute of Frauds (section 1624) is required to be satisfied if the contract as modified is within its provisions.

(d) Nothing in this section precludes in an appropriate case the application of rules of law concerning estoppel, oral novation and substitution of a new agreement, rescission of a written contract by an oral agreement, waiver of a provision of a written contract, or oral independent collateral contracts.

Cal.Civ.Code § 1698 (1989).

█ In *Motown Record Corporation v. Brockert*, 160 Cal.App.3d 123, 133, 207 Cal. Rptr. 574, 581 (1984), the California Appellate Court stated:

... The California Supreme Court has interpreted the language of section 1698

---

1. If Appellant was truly seeking the balance of the $4,153,000.00, then the Note's figures are incorrectly stated. Specifically, while acknowledging one past payment of $140,000.00, the Note provided for only six payments of $193,500.00, for a total of $1,301,000.00. Not only does this leave a deficiency of $652,000.00 with regards to the Note, but it leaves an additional deficiency of $598,400.00 with regards to the difference between the Note and $4,153,000.00, the amount that was originally to be raised via the PPM.

2. In essence, Judge Russell concluded that Appellant was able to complete the research and development with the $2,204,003.00 it received from Mediscan. Thus, the Note by Mediscan to Appellant for $1,953,000.00 was void and unenforceable because it constituted extra profit and was not supported by consideration.

literally, holding that an executory written modification must meet the requirements of a valid contract. (*See Timbie, Modification of Written Contracts in California* (1972) 23 Hast.L.J. 1549, 1553). Specifically, the court has held the modification must be supported by new consideration. (*Main St. & Agricultural Park R.R. v. Los Angeles Traction Co.* (1900) 129 Cal. 301, 305, 61 P. 937). Accordingly, an executory agreement to pay for the same performance is unenforceable. (*Fairlane Estates v. Carrico Constr. Co.* (1964) 228 Cal. App.2d 65, 71, 39 Cal.Rptr. 35).

*Motown Record Corporation*, 160 Cal. App.3d at 133, 207 Cal.Rptr. 574. In the instant case, Appellant agreed to perform what it was already obligated to perform for $1,601,871.00. Consequently, since doing that which one is legally bound to do is not sufficient consideration, we conclude that the Amendment and Note are not enforceable. *See Pacific Finance Corporation. First National Bank of Puente*, 4 Cal.2d 47, 47 P.2d 460, 461 (1935).

b. *Whether a contemporaneous oral agreement to pay more than specified in the original Agreement is valid and can be consideration for the Amendment.*

Appellant contends that when the Agreement was executed, it and APC orally agreed that Appellant would perform only part of the written contract if additional investors were not found. Appellant also contends that its subsequent oral agreement to do all the research and development constituted consideration for the Amendment. However, Appellant's duty to perform the research and development of the Project was expressly stated in the Agreement and was not modified by the Amendment. Specifically, Exhibit A to the Agreement includes a schedule of task plans and sub-tasks necessary to complete the Agreement. The Amendment did not change these tasks. Furthermore, paragraph 10.01 of the Agreement states that Appellant is to receive $1,601,871.00 in "full consideration" of its performance. With regard to oral agreements, paragraph 16 of the Agreement states:

16. *No Verbal Agreement.* No change in, addition to, or erasure of a printed portion of the Agreement (except for the filling of specific blank spaces and lines) shall be valid or binding upon either of the parties hereto and no verbal agreement of any nature, relating to the subject matter of this Agreement, or to any relationship between the parties, will be considered valid or enforceable. This Agreement may be amended only in writing.

Accordingly, Appellant's contention that it orally agreed to do only 13.5/35ths of the research and development needed to complete the Project is contrary to the express terms of the Agreement.

c. *Whether the Amendment and Note are valid because of impossibility of performance.*

Section 2 of the Agreement provides that all amounts paid by Mediscan to Appellant must qualify as tax deductible research and experimental expenditures under 26 U.S.C. § 174 of the Internal Revenue Code.[3] Section 174 permits deduction in full of research and experimental expenses in order to encourage such activities by new as well as ongoing companies. The tax benefits help to offset expenditures made for the activity during the initial phases when no income is being generated. However, the transaction must have something other than tax avoidance as its primary purpose. Thus, the transaction must be "in connection with" APC's trade or business.

After conducting a tax audit, the IRS concluded that APC was not engaged in a trade or business for purposes of section 174. Specifically, the IRS determined that APC had no means of directing the research activity and no ability to market the technology if it were not licensed. The activity of APC consisted of collecting on

3. APC sought to provide investors in the PPM with tax benefits in the form of deductible research and development expenses that maybe used to offset income from other sources.

its promissory notes, paying legal and accounting fees, making payments to the Appellant, and receiving periodic reports on the progress of the Project. The IRS concluded that this activity more closely resembles the passive participation of an investor rather than the activity of a trade or business.

Accordingly, the IRS determined that the $1,953,000.00 to be paid pursuant to the Note was a transaction structured primarily for tax benefits. Based on this finding, Mediscan argues that since the limited partners cannot obtain the tax benefits they bargained for, Appellant is not entitled to additional monies. Under applicable California law:

> A condition in a contract, the fulfillment of which is impossible or unlawful, within the meaning of the Article on the Object of Contracts, or which is repugnant to the nature of the interest created by the contract, is void.

Cal.Civ.Code § 1441 (1989).

The Second Restatement of Contracts is in accordance with California Civil Code § 1441, and provides that contractual obligations are discharged by supervening impracticability:

> Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary.

Restatement (Second) of Contracts § 261 (1981).

Accordingly, since the Agreement and subsequent Amendment and Note are not enforceable on the grounds that they were impossible to perform, Appellant is not entitled to the balance of the Note.

*d.  Whether the Amendment and Note are void because of fraud or because they resulted from violations of the securities laws.*

■ Mediscan contends that the repeated rearrangement of its contractual liability was in complete disregard of the representations made to the investors in the PPM. Mediscan argues that this misrepresentation reveals the extensive fraud perpetrated on the investors. Consequently, Mediscan argues that Appellant is liable under § 10(b) of the Securities Exchange Act of 1934 for participating in the fraud committed in connection with the sale of the Mediscan limited partnership units. Since the limited partnership units in Mediscan are securities within the purview of § 12(2) of the Securities Act of 1933, § 10(b) is applicable in the instant case.[4]

As to whether the numerous agreements and notes rendered the Amendment and Note void on grounds of fraud, the bankruptcy court held:

> Mr. Hubert, Mr. Greenamyer, and GE & T actively participated in and assisted in defrauding and concealing the truth from Mediscan's limited partners. Mr. Greenamyer, Mr. Hubert, GE & T and American Principals knew the offering had not been fully subscribed by December 31, 1981, and that the Private Placement Memorandum required the investors' payments to be returned. Rather than return the money, they prepared and signed the secret agreements so that the investors would not be refunded their money. American Principals and GE & T financially benefitted from the actions they took. The Agreement, Amendment and Note were obtained through common law fraud and should be rescinded. *Pulver v. Avco Financial Services*, 182 Cal.

---

**4.**  Section 10(b) of the Securities Exchange Act is an omnibus section which states:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
>
> \* \* \* \* \* \*
>
> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

App.3d 622, 639 [227 Cal.Rptr. 491]; *Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1526 (9th Cir.1987).

On the record before us the foregoing finding was not clearly erroneous and the bankruptcy court properly concluded that the fraud committed in connection with the sale of the Mediscan limited partnership units rendered the Amendment and Note void.

## CONCLUSION

For the foregoing reasons the bankruptcy court's refusal to enforce the Amendment and Note to the Agreement is AFFIRMED.